STATE OF NORTH CAROLINA v. LAMONTE CHARLES JOHNSON, Defendant

No. COA10-26

(Filed 1 March 2011)

**1. Jury— voir dire—limitations—failure to show prejudice**

The trial court did not err in a first-degree murder case by limiting defendant's jury *voir dire*. Even assuming *arguendo* that any limitations were improper, defendant failed to show that he was prejudiced.

**2. Evidence— written statement of coparticipant— corroboration**

The trial court did not err in a first-degree murder case by admitting the written statement of a coparticipant. The statement was not hearsay because it was admitted to corroborate the coparticipant's trial testimony.

**3. Evidence— video recording—coparticipant interrogation**

The trial court did not commit plain error in a first-degree murder case by admitting a video recording of another copartici- pant's interrogation. Even without the recorded testimony, the jury was presented with substantial evidence of defendant's guilt. It was not likely that a jury would have reached a different ver- dict absent admission of this evidence.

Appeal by defendant from judgment entered on or about 23 April 2009 by Judge J. B. Allen in Superior Court, Durham County. Heard in the Court of Appeals 18 August 2010.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Winifred H. Dillon, for defendant-appellant.*

STROUD, Judge.

Lamonte Charles Johnson ("defendant") appeals from his 20 April 2009 convictions for murder and discharging a firearm into an occupied vehicle. Defendant asserts that the trial court improperly limited jury *voir dire* and improperly admitted a written witness statement and recorded interrogation because they were hearsay not subject to any exception. For the following reasons, we find no error as to both the *voir dire* at trial and as to the admission of the written statement. Further, we find no plain error in the admission of the recorded interrogation.

## I. Background

The State's evidence in this case tended to show that Defendant, Delano Marley, John Flowers and Robert Lee met at a liquor house on 1 July 2007. The four men left the liquor house in a grey Chevrolet Suburban vehicle and stopped at Lee's house. When they left Lee's house, Flowers was driving. One AK-47 assault rifle was in the car and both Marley and defendant were armed with handguns. Defendant was seated in the back passenger's side seat. Marley was in the front passenger's side seat and Lee was seated in the back driver's side seat. At some point in their drive, the men spotted Darriaes McClain and pulled up alongside his car; both Marley and defendant stuck their guns out of the window and defendant fired at McClain's car. McClain was hit by multiple bullets and died of his injuries.

Defendant was indicted on 7 January 2008 for first-degree murder and discharging a firearm into an occupied vehicle. Defendant came to trial on 20 April 2009. At trial, two other participants in the attack testified against defendant pursuant to plea agreements and in exchange for a reduction in their sentences. A third participant contacted authorities seeking a reduction in his federal sentence on other charges. A jury convicted defendant of first-degree murder on the basis of malice premeditation and deliberation as well as the felony-murder rule and discharging a firearm into an occupied

vehicle on 23 April 2009. Defendant was sentenced to life in prison without parole for the first-degree murder conviction. The trial court entered a prayer for judgment continued on the firearm conviction. Defendant gave timely notice of appeal in open court.

## II. Analysis

Defendant asserts that his jury *voir dire* was improperly limited, that the admission of the written statement of witness John Flowers was in error, and that admission of the video recording of the interrogation of Delano Marley was in error. We examine each contention in turn.

### A. Jury *voir dire*

[1] Defendant asserts that his *voir dire* questioning was improperly limited in two respects. He claims first that his questioning was limited with respect to assessing the credibility of witnesses and, secondly, that his questioning was limited as to jurors' ability to follow the law on reasonable doubt. Defendant further asserts these limitations on his *voir dire*, "denied defendant the opportunity to seat an impartial jury by not allowing defense counsel to ask proper questions of prospective jurors . . ." He points to four specific instances in the record to prove his claims. We look to each instance in turn and disagree.

### 1) Standard of Review

Our Supreme Court has observed that, "[i]n this jurisdiction counsel's exercise of the right to inquire into the fitness of jurors is subject to the trial judge's close supervision. The regulation of the manner and the extent of the inquiry rests largely in the trial judge's discretion." *State v. Cummings*, 361 N.C. 438, 464, 648 S.E.2d 788, 804 (2007). "In order for the defendant to show reversible error, he must show that the trial court abused its discretion and that he was prejudiced thereby." *State v. Jones*, 339 N.C. 114, 134, 451 S.E.2d 826, 835 (1994). "An abuse of discretion is established upon a showing that the trial court's actions were 'manifestly unsupported by reason' and 'so arbitrary that [they] could not have been the result of a reasoned decision.'" *State v. Williams*, 361 N.C. 78, 81, 637 S.E.2d 523, 525 (2006) (alteration in original) (citations and quotation marks omitted). Appellate review of *voir dire* questioning requires the appellate court to focus not just on isolated questions, but on the "entire record of the *voir dire*." *State v. Jones*, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997) (citations omitted).

2) Substantive Issues

The "[t]wo purposes of *voir dire* are to allow the parties (1) to determine whether there exists a reason to challenge a prospective juror for cause; and (2) to intelligently exercise their limited number of peremptory challenges." *Cummings*, 361 N.C. at 464, 451 S.E.2d at 804 (citations omitted). "Questions designed to measure a prospective juror's ability to follow the law are proper within the context of jury selection *voir dire*." *Jones*, 347 N.C. at 203, 491 S.E.2d at 647. However, a defendant is not entitled to put on a mini-trial of his evidence during *voir dire* by using hypothetical questions situations to determine whether a juror would cast a vote for his theory. *Id.* "Hypothetical questions that seek to indoctrinate jurors regarding potential issues before the evidence has been introduced and before jurors have been instructed on applicable principles of law are similarly impermissible." *State v. Jones*, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997) (citations omitted). Specifically, parties are prohibited from asking a prospective juror "how they would be inclined to vote under a certain state of the evidence or upon a given state of facts[,]" *State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68, *death sentence vacated*, 428 U.S. 902, 49 L. Ed. 1206 (1976), on the basis that such questions are "confusing to the average juror" and "tend to 'stake out' the juror and cause him to pledge himself to a future course of action." *Id.*

i) Assessment of Witness Credibility

Defendant points to the following exchange between defense counsel, the State, prospective jurors, and the trial court in support of his assertion that defendant was precluded from inquiring into the jury's understanding of witness credibility:

[DEFENSE]: Now, when you make a determination about what happens, you're not to examine but two things. There are only two things you're going to be examining here. One is the testimony to the witness stand, and two is the physical evidence that may come in.

Ms. Johnson, can you examine the testimony from the witness stand to make a determination if someone's telling you the truth?

JUROR: Yes, sir.

[DEFENSE]: Mr. Colopy, can you do that, as well?

JUROR: Yes.

[DEFENSE]: Now, what type of facts would you look at, Mr. Colopy, to make the determination if someone's telling you the truth?

[STATE]: Objection.

THE COURT: Sustained.

In this first exchange, defense counsel attempts to question the prospective juror regarding the "type of facts" that he would use to determine "if someone is telling [him] the truth[.]" As we have noted above, our Supreme Court has made clear that "[h]ypothetical questions that seek to indoctrinate jurors regarding potential issues . . . before jurors have been instructed on applicable principles of law are . . . impermissible." *Jones*, 347 N.C. at 203, 491 S.E.2d at 647. The jury had not been instructed on the legal standard for weighing a witness's credibility. The trial court properly interrupted defense counsel's attempt to "stake out" this juror as to the way he would assess credibility. *See Id.*

The second exchange to which defendant points occurred just moments later, but after the judge had given the standard jury instruction regarding the assessment of evidence and obtained agreement from all jurors that they understood and could obey the law. Those instructions provided, in relevant part, that jurors, "should apply the same test of truthfulness which [they] apply in [their] everyday affairs" and continued to list a variety of factors which were germane to that consideration including "the opportunity of the witness to see, hear, know or remember the facts or occurrences about which he or she testified," and "any interest, bias or prejudice a witness may have." *See* N.C.P.I.–Crim. 101.15. Defense counsel then proceeded to question the jurors about specific portions of those instructions:

[DEFENSE]: Mr. Colopy, as the judge said, it's important—one of the facts that you can look at is the opportunity to see or hear. Would you be able to apply that in listening to the evidence from the witness stand?

JUROR: Yes.

[DEFENSE]: Ms. Falcon, would that be important to you whether a witness actually could have heard or saw [sic] what they said they did?

[STATE]: Objection.

THE COURT: (No response)

[DEFENSE]: Your Honor, there's an objection from them.

THE COURT: I didn't hear the question. Repeat it, and as to the objection, I'll rule.

[DEFENSE]: Ms. Falcon, would it be important to you that a person could actually observe or hear what they said they have from the witness stand?

[STATE]: Objection.

THE COURT: Sustained to the form of that question. I told you, ladies and gentlemen, what the law is about whether to determine to believe a witness or not. Can you follow the law? Can all of you follow that law?

JURY PANEL: Yes, yes, yes.

THE COURT: Raise your right hands if you can.

JURY PANEL: (Hands raised.)

THE COURT: Go on.

Defense counsel did not merely seek to find if the prospective juror could follow the law as given but, asked her to state the weight that she would give one factor in her analysis—"would it be important to you that a person could actually observe or hear what they said they have from the witness stand?" With no evidence yet before the jury, this question seeks to prepare the way for a particular argument that there is some question about the ability of one or more of the witnesses to "observe or hear what they said they could have from the witness stand." Seeking to "indoctrinate jurors regarding [a] potential issue[] before the evidence had been introduced," *Jones*, 347 N.C. 193, 491 S.E.2d 641, does not serve which are the proper purposes of *voir dire*, "to determine whether there exists a reason to challenge a prospective juror for cause;" or "to intelligently exercise their limited number of peremptory challenges." *Cummings*, 361 N.C. at 134, 451 S.E.2d at 835 (citations omitted). As such, the State's objection was properly sustained.

The third exchange followed soon after the first two. After a restatement of the law by the trial court, defense counsel continued his questioning of a prospective juror regarding the effect on the prospective juror's opinion of testimony obtained from a witness who was receiving a benefit from that testimony:

[DEFENSE]: Ms. George, would you also—one of the things the judge talked about also is if someone's getting a benefit from testimony. Would you look at that and make a determination of whether you believe their testimony or not?

[STATE]: Objection.

THE COURT: State—that's sustained. That's stating (inaudible) and no evidence has been shown of that.

Again, ladies and gentlemen, I told you how to determine whether to believe a witness. I told you what conditions you should look at, and you should follow that law.

Defendant rightly points out that the question of interested witness testimony is generally one that is ripe for consideration during *voir dire* and points to *State v. Jones*, 347 N.C. 193, 491 S.E.2d 641 (1997) (citations omitted), in support of his contention that defense counsel's questioning regarding interested witness testimony in this instance was proper.

In *Jones*, the State, during *voir dire*, asked the jury panel a series of questions regarding whether prospective jurors would be able to listen to and obey the trial court's instructions on the assessment of interested witness testimony and whether, if they found that testimony believable, they would be able to accord it the same weight as another witness's testimony:

There may be a witness who will testify in this case pursuant to a plea arrangement, plea bargain, a "deal" if you will, with the State. The mere fact that there is some plea arrangement, some plea bargain, entered into [by] one of the codefendants, would that affect your decision or your verdict in this case, just the fact that there had been some plea arrangement with one of the witnesses?

. . .

To put it another way, could you listen to the court's instructions of how you are to view accomplice or interested witness testimony, whether it came from the State or the defendant; could you listen and follow the court's instructions as to how you were to view that testimony? Anyone who could not do that?

. . .

After having listened to that testimony and the court's instructions as to what the law is, and you found that testimony believable, could you give it the same weight as you would any other uninterested witness? Anyone who could not do that?

*Id.* at 201-02, 451 S.E.2d at 646-48. Jones is first distinguished by the fact that, during the jury *voir dire* in that case, the State, having the burden of proof, introduced the possibility of witnesses testifying for the State under a plea agreement by stating that, "[t]here may be a witness who will testify in this case pursuant to a plea arrangement, plea bargain, a 'deal' if you will, with the State." *Id.*

A review of the record in the present case indicates that the possibility of interested witness testimony had not been mentioned by the State prior to defense counsel's posing the inquiry in question. Further, though defendant asserts that there was no "substantive difference between the questions posed by defense counsel in this case and those posed by the State in *Jones*," there are significant differences in the two lines of questioning. In *Jones*, the State's questions focused on juror's being affected by the "mere existence of a plea agreement" and followed by expressly asking jurors whether they "could . . . listen and follow the court's instructions as to how [they] were to view that testimony?" *Id.* Finally, the State in *Jones* asked whether the jurors could follow the law regarding the assessment of interested witness testimony, and gave a proper restatement thereof asking, "having listened to that testimony and the court's instructions as to what the law is, and you found that testimony believable, could you give it the same weight as you would any other uninterested witness?" *Id., See* N.C.P.I.–Crim. 101.15. At each stage in the inquiry, the State in that case focused on the law and sought to query jurors as to their ability to follow it.

Here, unlike in *Jones*, though the judge had instructed that "interest, bias or prejudice" was a valid criterion for each juror's determination of "whether to believe any witness[,]" jurors had been given no guidance as to the law for the assessment of the testimony of an interested witness. *See* N.C.P.I.-Crim. 104.20 ("You may find that a witness is interested in the outcome of this trial. In deciding whether or not to believe such a witness, you may take the witness's interest into account. If, after doing so, you believe the testimony in whole or in part, you should treat what you believe the same way as any other believable evidence."). Defense counsel sought, without the noticeable and exact preface of relevant law given in *Jones*, to query a juror

regarding the potential weight she would ascribe to interested witness testimony asking, "would you also—one of the things the judge talked about also is if someone's getting a benefit from testimony. Would you look at that and make a determination of whether you believe their testimony or not?" As the fact of interested witness testimony had not been introduced in this case, nor had the law properly governing the weight it should be accorded been discussed, *Jones* is inapplicable, and the State's objection in this case was properly sustained.

ii) Question regarding reasonable doubt

Defendant also asserts that he was improperly limited in his questioning of jurors regarding their "ability to follow the law on reasonable doubt." Defendant points to this fourth exchange in support of that assertion:

> [DEFENSE]: Now as the Judge told you, you all are the finders of the facts in this case. And in any case, the Judge is going to give you elements, that you have to find each element beyond a reasonable doubt.
>
> . . .
>
> Mr. Trullinger, if you hear the evidence, [sic] the see the evidence that comes in, and you find evidence on three factors—or three elements beyond a reasonable doubt, but you don't find on the fourth element, what would your verdict be?
>
> [STATE]: Objection. Staking out the jury.
>
> [DEFENSE]: That's not staking.
>
> THE COURT: The law is that if the State has a burden of proving anything beyond a reasonable doubt, and each and every element beyond a reasonable doubt, any one of the elements that they are required to prove, then it would be your duty to find the Defendant not guilty. If you can follow that law, please raise your right hand.
>
> JURY PANEL: (Hands raised.)

In this instance, defense counsel sought to get the prospective juror to state what he would do if he didn't "find [beyond a reasonable doubt] on the fourth element." This question attempts to get a juror to "pledge himself to a future course of action." *Vinson*, 287 N.C. at 336, 215 S.E.2d at 68. Attempting to elicit a prospective juror's decision

STATE v. JOHNSON

[209 N.C. App. 682 (2011)]

"under a certain state of the evidence or upon a given state of facts" has been prohibited by our Supreme Court and was properly prohibited in this case. *Id.*

The trial court's rulings upon all of the State's noted objections were proper under the law, and defendant has not demonstrated that the rulings were " 'manifestly unsupported by reason' [nor] 'so arbitrary that [they] could not have been the result of a reasoned decision.' " *Williams*, 361 N.C. at 81, 637 S.E.2d at 525. The limitations imposed by the trial court on defendant's jury *voir dire* questions were not an abuse of discretion and may not, therefore, be over-turned by this court. *Jones*, 339 N.C. at 134, 451 S.E.2d at 835.

Even were we to assume *arguendo* that any of the above limitations on defendant's *voir dire* were improper, defendant would still face the burden of proving that "he was prejudiced thereby." *Id.* review of the entirety of defendant's *voir dire* convinces us that is not the case. In three of the four instances of which defendant complains, the trial court intervened to state the appropriate law for the jury to follow and queried the jurors about whether they could follow the law. In each instance, all jurors answered they could. Defense counsel asked follow-up questions regarding whether they could follow the law. Given our review of the record, it would appear the *voir dire* afforded to defendant was adequate to allow him "to determine whether there exists a reason to challenge a prospective juror for cause; and . . . to intelligently exercise [his] limited number of peremptory challenges." *Cummings*, 361 N.C. at 134, 451 S.E.2d at 835. As to the defendant's contentions regarding interested witness testimony, we have already addressed the propriety of the limitations on defendant's *voir dire* but note that defendant only used four of his preemptory challenges in this case. Defendant makes no specific contention as to what he asserts would have been gained by further questioning beyond that which was allowed. Accordingly, even if we were to find error with regard to any of the limitations in questioning imposed by the trial court, the defendant has not carried his burden to "show that he was prejudiced thereby." *Jones*, 339 N.C. at 134, 451 S.E.2d at 835.

B. Admission of the written statement of witness John Flowers

[2] Defendant next contends that the statement of witness John Flowers was improperly admitted over defendant's objection because it was hearsay not subject to any exception. We disagree.

1) Standard of Review

Exceptions to the admission of evidence must generally be preserved by an objection by counsel at the time of their admission. N.C. Gen. Stat. § 8C-1, Rule 103; N.C.R. App. P. 10(a)(1). When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo*. *State v. Wilson* 197 N.C. App. 154, 159, 676 S.E.2d 512, 515 (2009). Failure to object, absent provision in the evidentiary rules, generally constitutes a waiver of any assignment of error on appeal related to the admission of evidence. See *State v. Reid*, 322 N.C. 309, 312, 367 S.E.2d 672, 674 (1988).

2) Substantive Issues

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2007). Hearsay is not to be admitted into evidence, "except as provided by statute or by [the evidentiary] rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2007).

Statements properly offered to corroborate former statements of a witness are "not offered for their substantive truth and consequently [are] not hearsay." *State v. Levan*, 326 N.C. 155, 167, 388 S.E.2d 429, 435 (1990). Corroborating statements are those statements that tend "to strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." *State v. Higgenbottom*, 312 N.C. 760, 769, 324 S.E.2d 834, 840 (1985). "Nevertheless, if the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible." *State v. Warren*, 289 N.C. 551, 557, 223 S.E.2d 317, 320 (1976); *See also State v. Locklear*, 320 N.C. 754, 761, 360 S.E.2d 682, 686 (1987) ("If previous statements offered in corroboration are generally consistent with the witness's testimony, slight variations between them will not render the statements inadmissible. Such variations only affect the credibility of the evidence which is always for the jury." (citations omitted)); *State v. Ligon*, 332 N.C. 234, 237, 420 S.E.2d 136, 143 (1987) ("prior consistent statements must corroborate the witness' testimony, but the corroborative testimony may contain new or additional information when it tends to strengthen and add credibility to the testimony which it corroborates" (citations omitted)).

i) Statement of John Flowers

Defendant contends that the admission of the written statement of John Flowers was improper because it was hearsay not subject to any exception. We find that the statement was properly admitted in corroboration of Flowers's trial testimony.

The record shows that Flowers testified at trial that he, defendant, and two other men met at a liquor house in Durham. Flowers got into a gray Chevrolet Suburban vehicle with defendant and the two other men and went to one of the men's houses. When the men left the house, Flowers was driving and defendant was seated in the rear passenger-side seat. As they were driving, one or more of the men spotted McClain, and Flowers began to follow him. When they pulled beside McClain's car, defendant and one of the other men in the car began to fire their weapons. Defendant was armed with a .40 or .45 caliber handgun. Defendant said he was motivated to shoot McClain because McClain had shot at defendant while his daughter was with him.

Defendant asserts that Flower's written statement differs from his trial testimony in that it includes: an assertion that the men left the liquor house to look for some "Crips" that they had been "beefing" with; that all of the men but Flowers were armed; that one of the passengers in the grey Chevrolet Suburban vehicle had an AK-47 rifle, defendant had a .45 caliber handgun, and another of the passengers had a .40 caliber handgun; that defendant had borrowed a .45 caliber handgun from another person, a black male, at the liquor house; that defendant had left his .38 caliber handgun with the black male at the liquor house; that, when they spotted McClain, one of the passengers said, "I'm going to cap him;" then defendant and another of the passengers said, "I'm going to get him too;" and that after the shooting, defendant again exchanged guns with the black male at the liquor house.

It is evident from a review of the record that Flowers's written statement is "generally consistent with [Flowers's] testimony." *Warren*, 289 N.C. at 557, 223 S.E.2d at 320. Both the statement and testimony tell generally the same story. Defendant and his companions drove together, met McClain on the road, and shot him. All points that differ are "slight variations" in Flower's of trial testimony, "which only affect the credibility of the evidence which is always for the jury," e.g. whether the caliber of weapon carried by defendant was either .40 or .45 caliber or .45 caliber specifically, *Locklear*, 320 N.C. at 761, 360 S.E.2d at 686, or are likewise permissible because they add "new or

additional information" that "strength[ed] and add[ed] credibility" to Mr. Flowers's testimony, *e.g.* the reason the four men went out driving. *Ligon*, 332 N.C. at 237, 420 S.E.2d at 143. As Flowers's written statement was properly admitted corroborate of his trial testimony, we find no error in its admission. *See State v. Levan*, 326 N.C. 155, 167, 388 S.E.2d 429, 435 (1990).

C. Recorded interrogation of Delano Marley

**[3]** Defendant also asserts that the admission of Delano Marley's interrogation was in error in that the statement was hearsay not subject to any exception with this argument directed to both the statements made by Mr. Marley as well as to the statements made during the interrogation by police. As defendant asserts these claims without having made an objection at trial, he pleads plain error.

1) Standard of Review

The general requirement that a timely objection at trial is required to preserve an assignment of error for appeal is modified when a claim of plain error is made. N.C.R. App. P. 10(a)(4). However, without a timely objection at trial, the burden that an appellant faces in challenging the improper admission of evidence under the plain error standard is higher than that faced by an appellant who has preserved the issue by a proper objection. *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). Plain error analysis is limited to review of "jury instructions and evidentiary matters[.]" *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39-40 (2002). The North Carolina Supreme Court has cautioned that the plain error rule is to be "applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done. . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations and quotation marks omitted). For an appellate court to find plain error, it must first be convinced that, "absent the error, the jury would have reached a different verdict." *Reid*, 322 N.C. at 313, 367 S.E.2d at 674 (citation omitted). The burden of proving plain error falls on defendant. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

As noted above, it is established law in this State that, in order for the appellate court to make a finding of plain error, the court must be convinced that, absent the proposed error, "the jury would have reached a different verdict". *Reid*, 322 N.C. at 313, 367 S.E.2d at 674. That is not so here.

**STATE v. JOHNSON**

[209 N.C. App. 682 (2011)]

Even without the recorded testimony of witness Delano Marley, the jury was presented with substantial evidence of the defendant's guilt. This evidence includes: the in-court testimony of Delano Marley and two of defendant's other companions during the attack was that the defendant went with them in the gray Chevrolet Suburban vehicle, that the vehicle in which defendant was riding, pulled alongside McClain's car and defendant fired his weapon into the vehicle at McClain; the in-court testimony of Mr. Flowers that defendant had a grudge against McClain because McClain shot at him while his daughter was with him; and testimony of the medical examiner confirming that McClain died of his gunshot injuries.

Given the strength and consistency of the evidence against the defendant as to all the essential elements of each of the crimes charged, it is not likely that the jury would have "reached a different verdict" even absent the admission of witness Delano Marley's recorded interrogation and, therefore, there is no plain error in its admission. *Reid*, 322 N.C. at 313, 367 S E.2d at 674.

### III. Conclusion

The trial court did not err in the restrictions it placed upon defendant's *voir dire* or in the admission of the written statement of Flowers, nor was there plain error in the trial court's admission of the video of Marley's interrogation.

NO ERROR.

Judges McGEE and ERVIN concur.