An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate P r o c e d u r e .

NO. COA13-1013

NORTH CAROLINA COURT OF APPEALS

Filed:  1 April 2014

STATE OF NORTH CAROLINA

v.                                 Mecklenburg County
                                   No. 09 CRS 86046

SAM DAVID ANDREWS


Appeal by defendant from judgment entered 28 February 2013 by Judge Sharon Tracey Barrett in Mecklenburg County Superior Court.  Heard in the Court of Appeals 21 January 2014.


*Attorney General Roy Cooper, by Special Deputy Attorney General Angel E. Gray, for the State.*

*Arnold & Smith, PLLC, by Laura M. Cobb, for defendant-appellant.*


HUNTER, Robert C., Judge.

Sam David Andrews ("defendant") appeals from judgment sentencing him to 18 months of unsupervised probation after being convicted of driving while impaired.  On appeal, defendant argues that the trial court erred by:  (1) admitting blood sample evidence without all members of the chain of custody being present at trial in violation of defendant's Sixth

Amendment right of confrontation; (2) allowing defendant's blood sample results to be introduced as evidence when the State failed to give defendant notice of his rights under N.C. Gen. Stat. § 20-16.2; (3) admitting statements into evidence concerning the blood sample results that constituted inadmissible hearsay; and (4) denying defendant's motion to dismiss for insufficiency of the evidence.

After careful review, we find no error.

**Background**

The evidence presented at trial tended to establish the following facts:  In the early morning of 1 January 2010, Officer John Reibold of the Charlotte Mecklenburg Police Department ("CMPD") reported to a four-car accident at the intersection of Providence Road and Ardrey Kell Road in Charlotte, North Carolina.  Upon arrival and after speaking with defendant, Officer Reibold noticed defendant had a strong odor of alcohol about his breath, glassy eyes, and slurred speech. Defendant also admitted to Officer Reibold he had consumed five alcoholic drinks within the past five hours and should not have been driving that night.

Officer Reibold next inspected defendant's car and found an open alcohol container in the passenger area.  Officer Reibold then requested that defendant perform a series of field sobriety tests, which defendant failed.  Before defendant could finish

the complete series of sobriety tests, the medics approached and transported defendant to the hospital. Officer Reibold followed the ambulance to the hospital to continue his investigation.

After arriving at the hospital and locating defendant in triage, Officer Reibold read defendant his rights to submit to a chemical analysis and gave defendant a copy of the form to sign. Defendant was immobilized in a C-Spine collar and did not sign the form. However, Officer Reibold wrote "unable to sign" on the form, and defendant gave Officer Reibold verbal consent to perform a blood draw chemical analysis. Officer Reibold prepared the blood draw kit and necessary paperwork and watched as a registered nurse from the hospital obtained two vials of defendant's blood. After receiving the vials of defendant's blood from the nurse, Officer Reibold labeled both vials and placed them into a plastic blood kit. Officer Reibold then sealed the blood kit with blue evidence tape, placed the blood kit into a cardboard box, labeled the box with the case number, and sealed the box with red evidence tape.

Next, Officer Reibold issued defendant a citation for DWI and left defendant in the care of the hospital. After leaving the hospital, the blood kit remained in Officer Reibold's exclusive possession until it was submitted to CMPD property control later that morning.

On 9 March 2010, Anne Charlesworth, a CMPD Crime Lab

chemical analyst, received defendant's blood kit from CMPD property control for testing. After verifying the identification numbers and ensuring the blood kit had not been tampered with, Ms. Charlesworth analyzed the blood inside and determined the sample of defendant's blood contained .23 grams of alcohol per 100 milliliters of blood. Ms. Charlesworth then resealed the box with labels containing her signature and the date.

Defendant was charged with DWI and possession of an open alcohol container in the passenger area of a motor vehicle; the open container charge was voluntarily dismissed before trial. Defendant's trial was held on 26 February 2013, and the jury convicted defendant of DWI. Defendant was sentenced as a Level III offender after admitting to one aggravating factor and sentenced to six months imprisonment. The trial court suspended the sentence, and defendant was placed on unsupervised probation for eighteen months. Defendant appealed.

## Arguments

### I. Admissibility of the Blood Sample Results

Defendant first argues the trial court erred by admitting blood sample evidence without all members in the chain of custody having been present during his trial. Specifically, defendant contends the absence of these individuals in the chain of custody violated his Sixth Amendment right to confrontation

as interpreted by the U.S. Supreme Court in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 174 L. Ed. 2d 314 (2009), and *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). We disagree.

Defendant mistakenly phrases his argument as a constitutional violation; however, his argument actually challenges an evidentiary ruling on the chain of custody. A trial court's decision to admit evidence when the chain of custody is questioned is reviewed for abuse of discretion. *State v. Campbell*, 311 N.C. 386, 388-89, 317 S.E.2d 391, 392 (1984). "A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision." *State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (quotation marks omitted).

In all criminal prosecutions "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz*, 557 U.S. at 309, 174 L. Ed. 2d at 318. The Sixth Amendment "guarantees a defendant's right to confront those who bear testimony against him." *Id.* (quotations omitted).

Defendant's argument relies on the holding in *Melendez-Diaz* where the United States Supreme Court held it is a violation of

the defendant's Sixth Amendment rights for drug analysis results to be admitted without the chemical analyst being present at trial or having been cross-examined by the defendant before trial. *Id.* at 310, 174 L. Ed. 2d at 319. However, the present case is easily distinguished from *Melendez-Diaz* because the chemical analyst who provided the blood test results, Anne Charlesworth, was present and was cross-examined during defendant's trial. All chain of custody testimony concerning defendant's blood sample was taken from Anne Charlesworth and Officer Reibold, and defendant was able to cross-examine both of them.

Furthermore, the trial court never admitted testimony from the two members of property control or the blood draw nurse who were absent during defendant's trial. As to the necessity of nonessential links in the chain of custody, the U.S. Supreme Court specifically noted in *Melendez-Diaz* that:

> Contrary to the dissent suggestion, . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that '[i]t is the obligation of the prosecution to establish chain of custody,'. . . this does not mean that everyone who laid hands on the evidence must be called.

*Melendez-Diaz,* 557 U.S. at 311, n.1, 174 L.Ed.2d at 320, n.1.

(emphasis added). "[G]aps in the chain of custody normally go to the weight of the evidence rather than its admissibility." *Id.*; *see also State v. Fleming*, 350 N.C. 109, 131, 512 S.E.2d 720, 736 (1999) ("[a]ny weak links in a chain of custody pertain only to the weight to be given evidence and not to its admissibility"); *State v. Stevenson*, 136 N.C. App. 235, 242, 523 S.E.2d 734, 738 (1999) (admitting evidence "is at the trial court's discretion, and any weak links in a chain of custody relate only to the weight to be given the evidence and not to its admissibility"). Additionally, this Court has further held that blood sample evidence, in particular, will be admitted if the evidence as it is presented can reasonably support a conclusion that the blood sample analyzed is the same as that taken from the defendant. *State v. Bailey*, 76 N.C. App. 610, 614, 334 S.E.2d 266, 269 (1985), *overruled on other grounds*, *State v. Drdak*, 330 N.C. 587, 411 S.E.2d 604 (1992).

Here, Officer Reibold testified at trial that he personally watched the registered nurse withdraw defendant's blood, received the vials of blood directly from the nurse, and sealed the blood sample in two labeled containers with evidence tape before personally submitting defendant's blood sample to CMPD property control. Officer Reibold also testified generally as to the secure conditions present at CMPD property control. Anne Charlesworth then testified that upon receiving the blood sample

from CMPD property control, she immediately examined the sample's identification numbers for accuracy and inspected the sample for evidence of tampering. Anne Charlesworth later resealed, signed, and dated the contents of the container after her testing was complete.

There was ample testimony presented by the two most important links in the chain of custody for the trial court to conclude the blood sample was the same as that taken from defendant and had undergone no material change. Moreover, defendant has presented no evidence that defendant's blood sample had been tampered with or altered in any way. Therefore, we find the trial court did not abuse its discretion in admitting the blood test results.

## II. Consent to Perform Chemical Analysis

Defendant next contends the results of the blood sample should not have been introduced at trial because the blood draw was based on a warrantless, nonconsensual seizure. Specifically, defendant argues that Officer Reibold did not notify defendant of his rights as required by N.C. Gen Stat. § 20-16.2. We disagree.

N.C. Gen Stat. § 20-16.2 (2011) provides in pertinent part:

> Before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test . . . who shall inform the person orally and also give the person a

notice in writing . . . .

Officer Reibold testified that after he located defendant at the hospital, he provided defendant with both an oral and written presentation of his rights to consent or refuse a chemical analysis. Officer Reibold also testified that after notifying defendant of his rights, defendant verbally consented to the blood sample chemical analysis, but was unable to sign the written form because he was immobilized in a C-spine collar. The provisions of N.C. Gen Stat. § 20-16.2 are conformed with "when the arrestee is given the option to submit or refuse to submit . . . and his decision is made after having been advised of his rights in a manner provided by statute." *State v. Gunter*, 111 N.C. App. 621, 626-27, 433 S.E.2d 191, 194 (1993). Since the only evidence presented at trial showed Officer Reibold followed the provisions of the statute and defendant consented to the blood draw, we hold a warrant was not necessary, and the trial court did not abuse its discretion by allowing the blood test results into evidence.

## III. Admissibility of Hearsay

Defendant next argues that the trial court erred in admitting Officer Reibold's and Anne Charlesworth's out-of-court hearsay statements to authenticate defendant's blood sample. We disagree.

"When preserved by an objection, a trial court's decision

with regard to the admission of evidence alleged to be hearsay is reviewed *de novo.*" *State v. Johnson*, 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011).

Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2011). However, statements offered to corroborate trial testimony do not constitute hearsay. *See State v. Johnson*, 209 N.C. App. 682, 693, 706 S.E.2d 790, 797 (2011) (holding that a witness's "[written] statement was properly admitted in corroboration of [the] defendant's trial testimony" because it did not constitute hearsay).

Defendant argues that the trial court erred in allowing Officer Reibold and Anne Charlesworth to testify as to certain identification information they wrote on defendant's blood sample, which was inadmissible hearsay. However, a review of the transcript reveals Officer Reibold and Anne Charlesworth testified only to the signatures, dates, and identification information they personally placed on the blood sample kit and the general security precautions used by property control. Thus, Officer Reibold's and Anne Charlesworth's out-of-court identification statements only corroborated their in-court testimony. *See Johnson*, 209 N.C. App. at 692, 706 S.E.2d at 797. Accordingly, we find the trial court did not err by

overruling defendant's hearsay objections at trial or admitting Officer Reibold's or Anne Charlesworth's testimony concerning the blood sample results.

**IV. Motion to Dismiss**

Finally, defendant argues the trial court erred when it denied his motion to dismiss for insufficiency of the evidence. Specifically, defendant contends the State did not present sufficient evidence that defendant had been operating a motor vehicle while impaired. We disagree.

"The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (quotations and citations omitted). A motion to dismiss is reviewed for "whether the State presented substantial evidence of each element of the offense and defendant's being the perpetrator*." State v. Hernandez*, 188 N.C. App. 193, 196, 655 S.E.2d 426, 429 (2008).

Here, defendant was charged with driving while impaired in violation of N.C. Gen. Stat. § 20-138.1. In order to be convicted of driving while impaired, the State must prove the following essential elements: "(1) Defendant was driving a vehicle; (2) upon any highway, any street, or any public vehicular area within this State; (3) while under the influence of an impairing substance." *State v. Tedder*, 169 N.C. App. 446,

450, 610 S.E.2d 774, 777 (2005) (quotations omitted).

Defendant first argues the State failed to present substantial independent evidence he was driving on the date of the incident. This Court has held a defendant's admission of driving, presence at the accident scene, and injuries consistent with being in an auto accident constitute substantial evidence of driving. *State v. Foye*, __ N.C. App. __, __, 725 S.E.2d 73, 78 (2012). The evidence presented at trial showed that defendant not only admitted he was driving but also that defendant was present at the scene and had to be transported to the hospital as a result of the traffic accident. Thus, we conclude the trial court had substantial evidence defendant was driving.

Next, Defendant argues the State did not present substantial evidence of impairment. Evidence that a defendant's blood alcohol level was above .08, defendant had an odor of alcohol about him, and defendant admitted to drinking earlier in the night constitutes substantial evidence of impairment. *State v. Phillips*, 127 N.C. App. 391, 393-94, 489 S.E.2d 890, 892, (1997). While defendant predicates his contention that he was not impaired on his previous argument concerning the admissibility of the blood sample results, as discussed, the blood sample results were properly admitted into evidence. Thus, evidence of those results that established that defendant

had a .23 blood-alcohol concentration combined with evidence that defendant had an open alcohol container in his car, slurred speech, and an odor of alcohol about him constituted substantial evidence of impairment.

Therefore, in summary, the State presented substantial evidence defendant was operating a motor vehicle while impaired, and the trial court did not err in denying defendant's motion to dismiss.

## Conclusion

Based on the foregoing reasons, defendant's trial was free from error.

NO ERROR.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).