STATE OF NORTH CAROLINA v. KEITH A. BAILEY

No. 844SC1089

(Filed 17 September 1985)

1. **Automobiles and Other Vehicles § 126.3; Criminal Law § 55— blood sample— drawing by qualified person—testing procedures**

    The State's evidence established that a blood sample was drawn from defendant by a qualified person within the meaning of G.S. 20-139.1(c) where it showed that the person withdrawing the blood had a degree in medical laboratory technology and over three years experience as a technologist, and that her normal duties consisted of drawing blood. Furthermore, the State was not required to show the nonexistence of flaws in the testing procedures in order for the results of chemical analysis of the blood to be admissible.

2. **Automobiles and Other Vehicles § 126.2; Criminal Law § 42.6— blood sample— same blood as drawn from defendant—chain of custody**

    The State sufficiently demonstrated that a vial of blood introduced into evidence was the same blood as that drawn from defendant in a hospital, although the vial was labeled "John Doe No. 2," was placed in the hospital's laboratory refrigerator to which other hospital personnel had access, and was later placed in a highway patrolman's home refrigerator where it was accessible to his family, where each witness who had custody of the vial of blood from the time it was drawn until the time of its analysis testified that nothing was done to alter or change the contents of the vial while in the witness's custody and that the vial did not appear to have been tampered with.

3. **Automobiles and Other Vehicles § 113.1— involuntary manslaughter—cause of collision—sufficiency of evidence**

    The evidence was sufficient to support defendant's conviction on two charges of involuntary manslaughter arising from a collision between two

vehicles where there was evidence that defendant was driving with a blood alcohol content of .17%, testimony by a witness who observed the vehicles immediately before the collision and by the investigating patrolmen supported an inference that defendant's automobile crossed the center line of the highway and struck the other vehicle, and the evidence showed that two persons in the other vehicle died from injuries received in the collision.

APPEAL by defendant from *Llewellyn, Judge.* Judgment entered 14 December 1983 in Superior Court, ONSLOW County. Heard in the Court of Appeals 20 August 1985.

Defendant was charged with two counts of involuntary manslaughter, driving left of center and driving while under the influence of alcohol. A jury returned verdicts of guilty as to all offenses. The trial judge arrested judgment as to the misdemeanors and imposed the presumptive sentence of imprisonment for each count of involuntary manslaughter, to run consecutively. Defendant appealed.

*Attorney General Lacy H. Thornburg, by T. Buie Costen, Special Deputy Attorney General, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant appellant.*

MARTIN, Judge.

Defendant brings forward two assignments of error. The first relates to the admissibility of a vial of blood allegedly drawn from defendant at Onslow Memorial Hospital; the second challenges the sufficiency of the evidence to withstand his motions for dismissal of the charges. For the reasons which follow, we conclude that the challenged evidence was properly admitted and that the State presented sufficient evidence to sustain the convictions.

At trial the State's evidence tended to show that the defendant was driving an Oldsmobile automobile south on U.S. 17 in Onslow County during the early morning hours of 2 June 1983 when he was involved in a head-on collision with an M.G. automobile occupied by Zachary Lennon and Ronnie Beatty. Lennon was killed instantly and Beatty died within several hours after the collision. Approximately 10 to 15 seconds before the collision occurred, defendant's Oldsmobile passed an automobile driven by Ronnie Griffin, who was also travelling south on U.S. 17. After defend-

ant's car had gotten about a quarter mile in front of Griffin's car, Griffin saw two headlights coming from the opposite direction. As he watched, he became able to see only one headlight. He then saw the oncoming car swerve suddenly to its right and "then everything just went dark." He did not see the Oldsmobile swerve. When he arrived at the scene, he found an M.G. automobile occupied by the victims in the ditch to the right side of its travel lane; defendant's automobile was stopped crosswise in the southbound lane of the road with its front end over the center line. Trooper Dennis described damage to the left front portion of each vehicle. Most of the debris and gouge marks on the road were located in the northbound lane, which had been the travel lane for the M.G. Trooper Dennis found an empty wine bottle and an empty beer bottle in defendant's car. Both Beatty and defendant were taken to Onslow Memorial Hospital. Beatty's identity was ascertained shortly thereafter, however defendant's identity remained unknown at the time his treatment began. Trooper Dennis detected the odor of alcohol on defendant's breath at the emergency room. Medical evidence showed that both Lennon and Beatty died from injuries received in the collision.

Jacqueline Hazelton, a medical laboratory technologist, drew two samples of blood from defendant for purposes of medical treatment. Defendant was unconscious. Because she did not then know defendant's name, she labeled one of the vials "John Doe No. 2" and placed it in a refrigerator. The other vial was placed in a different refrigerator and was subsequently disposed of. The following day, Trooper John Dennis of the State Highway Patrol, the investigating officer, obtained a court order to receive possession of the vial of blood. The order was served on Cecil Jones, Chief Medical Technologist for the hospital, who removed the vial of blood labeled "John Doe No. 2" from the refrigerator where it had been placed by Ms. Hazelton and turned it over to Trooper Dennis. Trooper Dennis took the vial to his home and placed it in his refrigerator until 20 June 1983 when he arranged for another officer, Trooper Calder, to transport the vial to the SBI laboratory in Raleigh for analysis. The State and the defense stipulated that the sample was received and properly tested, in accordance with procedures approved by the Commission for Health Services, at the SBI laboratory by Carl Kempe, a forensic chemist possessing a permit issued by the Department of Human Resources for

chemical analysis of blood. The result of the analysis indicated that the defendant had a blood alcohol content of .17%.

I

[1]  Defendant contends by his first assignment of error that the trial court erred in admitting evidence of the blood sample in that the evidence was insufficient to establish the integrity or identity of the sample. He argues first that the State failed to demonstrate that the blood sample was drawn according to the requirements of G.S. 20-139.1(c) or that the specimen was reliable. We find no merit in this argument. G.S. 20-139.1(c) simply provides that when a blood test is to be used to determine a person's alcohol concentration "only a physician, registered nurse, or other qualified person may withdraw the blood sample." The State presented evidence that Ms. Hazelton had a degree in Medical Laboratory Technology, over three years experience as a technologist, and that her normal duties consisted of drawing blood. This is certainly sufficient evidence that defendant's blood was drawn by a qualified person. *See State v. Watts*, 72 N.C. App. 661, 325 S.E. 2d 505 (1985). As to the reliability of the specimen for testing, defendant argues that the State failed to produce evidence that the specimen was not contaminated by testing or by procedures in obtaining the specimen, such as the use of an alcohol swab on defendant's arm or sterilization of the sampling apparatus in alcohol. There was no evidence elicited on direct or cross-examination of the technologist as to the procedures employed in drawing the specimen, or whether any tests were, in fact, performed on it at the Onslow Memorial Hospital laboratory. The State is not required to negate every possible flaw in the testing procedure in order for the results of the chemical analysis to be admissible, it is only required that the State show compliance with the provisions of G.S. 20-139.1. In this case, through its evidence and the defendant's stipulation, the State met its burden of proving compliance with the statute so as to render the evidence admissible. Defendant's argument that the State has failed to show the nonexistence of flaws in the procedures more properly relates to the weight to be given the evidence by the jury, rather than its admissibility.

[2]  Defendant also contends that the evidence was insufficient to identify the blood sample labeled "John Doe No. 2" as the same

blood sample drawn from the defendant. Defendant argues that because the vial was labeled in that manner and placed in the hospital's laboratory refrigerator to which other hospital personnel had access and was later placed in Trooper Dennis' home refrigerator where it was accessible to his family, the State failed to demonstrate that the vial of blood introduced in evidence at the trial was the same blood as that drawn from the defendant. We disagree.

Proof beyond all doubt is not required. The trial judge, in his discretion, determines the standard of certainty required in showing that an object offered at trial is the same as that taken from the defendant. *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978). If all the evidence can reasonably support a conclusion that the blood sample analyzed is the same as that taken from the defendant then it is admissible into evidence. *State v. Karbas*, 28 N.C. App. 372, 221 S.E. 2d 98, *disc. rev. denied*, 289 N.C. 618, 223 S.E. 2d 395 (1976). The fact that the defendant can show potential weak spots in the chain of custody only relates to the weight to be given the evidence establishing the chain of custody. *State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979).

The State presented the testimony of each witness who had custody of the vial of blood from the time it was drawn until the time of its analysis. Each of the witnesses testified that nothing was done by them to alter or change the contents of the vial while in their custody and that the vial did not appear to have been tampered with. The evidence was sufficient to reasonably support the conclusion that the blood sample analyzed by Agent Kempe and introduced at trial was the same as that drawn from defendant by Ms. Hazelton.

## II

[3] By his second assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the charges due to the insufficiency of the evidence. A defendant may be convicted of involuntary manslaughter in connection with the operation of a motor vehicle upon proof by the State that defendant (1) violated a safety statute, (2) in a culpably negligent manner, and (3) that such violation was a proximate cause of the victim's death. *State v. Gainey*, 292 N.C. 627, 234 S.E. 2d 610 (1977); *State v. Massey*, 271 N.C. 555, 157 S.E. 2d 150 (1967); *State v. Cope*, 204

N.C. 28, 167 S.E. 456 (1932). Defendant argues that the State's evidence was insufficient to prove that he was at fault in causing the collision and therefore the State failed to prove that his conduct proximately caused the deaths of Lennon and Beatty.

In order to withstand a motion to dismiss in a criminal case, there must be substantial evidence of each of the material elements of the offense charged. *State v. Myrick*, 306 N.C. 110, 291 S.E. 2d 577 (1982). The evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact which may be drawn from the evidence. *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980). The test of the sufficiency of the evidence is the same whether the evidence is direct, circumstantial, or both. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

An analysis of the State's evidence in this case, in the light of the foregoing rules of law, reveals that the State has produced substantial evidence that defendant's culpably negligent conduct, consisting of operating his automobile while under the influence of alcohol and to the left of the center of the highway, caused the collision. Evidence of defendant's blood alcohol content gives rise to a reasonable inference of fact that he was operating his automobile while under the influence of alcohol. Further, a reasonable inference may be drawn, from the testimony of Ronnie Griffin as to his observation of the vehicles immediately before the collision and from the testimony of Trooper Dennis as to his findings at the scene, that defendant's automobile crossed the center line of the highway and struck the M.G. automobile. That the collision resulting in the deaths of Lennon and Beatty was proximately caused by the defendant's culpable negligence is supported by sufficient evidence. This assignment of error is overruled.

No error.

Judges WEBB and BECTON concur.