STATE OF NORTH CAROLINA v. ROBERT JOSEPH DRDAK

No. 9021SC384

(Filed 19 February 1991)

**Automobiles and Other Vehicles § 813 (NCI4th)— driving while impaired—blood test analysis—erroneously admitted**

A blood test analysis was erroneously admitted and a new trial for driving while impaired was granted where defendant was involved in a one-car accident after consuming alcohol; he was found unconscious in his car; those who came to his aid noticed an odor of alcohol on his breath; the investigating officer did not order a blood sample to be analyzed pursuant to the appropriate statutes; the treating physician ordered a routine series of laboratory tests, including a request for blood ethanol level, which he considered necessary for treatment; a phlebotomist at the hospital took blood samples and a medical technician analyzed the blood sample; defend-

ant's blood alcohol concentration was .178; the results were recorded and the blood sample destroyed; and defendant was charged after the local newspaper obtained defendant's confidential medical records and reported defendant's blood alcohol content. The State stipulated that statutory procedures for chemical analysis of blood alcohol content were not followed and, even though the State contended that the evidence was admissible as an "other chemical test" rather than a chemical analysis, the purpose of defendant's blood test was to determine the alcohol contentration of his blood. Under these facts, the analysis of defendant's blood did not meet the statutory requirements for chemical analysis and should not have been admitted. N.C.G.S. § 20-139.1 (1983); N.C.G.S. § 20-4.01(3a) (1983).

**Am Jur 2d, Automobiles and Highway Traffic §§ 305, 306, 375, 377, 378.**

APPEAL by defendant from judgment entered 15 November 1989 by *Judge W. Steven Allen, Sr.*, in FORSYTH County Superior Court. Heard in the Court of Appeals 14 January 1991.

On 15 March 1989, defendant was charged with driving while impaired in violation of N.C. Gen. Stat. § 20-138.1 in connection with a single car accident which occurred on 14 February 1989. Defendant was convicted on 15 June 1989 and appealed to Superior Court. A jury convicted defendant on 15 November 1989. Defendant received a 24-hour jail term, suspended, and unsupervised probation for three years. As a condition of probation, defendant agreed to perform 24 hours of community service and complete Alcohol, Drug Education and Traffic School.

From the judgment of 15 November 1989, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*D. Blake Yokley and Donald K. Tisdale for defendant-appellant.*

ORR, Judge.

The dispositive issue on appeal is whether the trial court erred in denying defendant's motions to suppress the admission into evidence of defendant's medical records including the results of a blood alcohol test on the ground that the test was not in accordance with the provisions of N.C. Gen. Stat. §§ 20-16.2 and 20-139.1.

STATE v. DRDAK

[101 N.C. App. 659 (1991)]

For the following reasons, we hold that the trial court erred and reverse the judgment of 15 November 1989.

The following facts are pertinent to this case on appeal. On 14 February 1989, defendant, an agent for the Federal Bureau of Investigation, met with another agent to discuss a case. Over the course of the evening, defendant consumed one beer, two mixed drinks, less than one glass of wine and a glass of cognac between the hours of 5:00 p.m. and 10:00 p.m. Defendant then left his fellow agent's house and drove onto Staffordshire Road. The evidence of record indicates that defendant lost control of his car and struck a tree.

Terry Austin, who was inside a house across the street, arrived on the scene within a few minutes. When she opened the passenger door of defendant's car, she found defendant unconscious and lying on his right side on the front seat. Ms. Austin testified that she supported defendant's head until help arrived approximately 20 minutes later. Judith Kay, who was with Ms. Austin, notified the police immediately and assisted Ms. Austin. Both witnesses testified that they noticed a moderate odor of alcohol on defendant's breath.

Scott Emerson, emergency medical services technician, testified that he arrived on the accident scene at 10:18 p.m. and examined defendant for injuries. During this examination, Mr. Emerson detected a moderate odor of alcohol on defendant's breath.

Defendant was then transported to Forsyth Memorial Hospital before the investigating officer, Officer Lichtenhan, arrived at the accident scene. When Officer Lichtenhan arrived at the hospital at 11:40 p.m., he detected a slight odor of alcohol on defendant. Officer Lichtenhan stated in his police report that defendant had been drinking, but that he was unable to form an opinion that defendant was impaired in any way. Officer Lichtenhan did not order a blood sample to be analyzed for blood alcohol content pursuant to the appropriate statutes.

Dr. Daniel Sayers treated defendant at the emergency room and ordered a routine series of laboratory tests including a request for blood ethanol level, which he considered necessary for treatment purposes. A phlebotomist at the hospital, Jo Annette Matthews, drew blood samples from defendant between 10:50 p.m. and 11:00 p.m., using an iodine prep containing no ethanol alcohol, and then delivered the samples to the lab for testing.

Kathleen Thore, medical technologist, analyzed defendant's blood sample on 14 February 1989 and determined that his blood alcohol concentration result was 0.178 grams per milliliter of blood. The results were recorded and the blood samples destroyed in seven days pursuant to hospital procedure.

On 22 February 1989, the Winston-Salem Journal reported that it had obtained defendant's confidential medical records and then reported the above information concerning defendant's blood alcohol content. Based upon the news report, the district attorney filed a motion to compel disclosure of defendant's medical records. The court ordered such disclosure on 9 March 1989. On 15 March 1989, defendant was charged with driving while impaired on 14 February 1989.

Prior to trial, defendant moved to suppress the admission of the results of the blood test analysis performed on 14 February 1989 and offered the following stipulated facts:

1. Cathy Thore, the Hospital employee performing the blood-alcohol test, is *not* licensed by and *does not possess* a permit from the Department of Human Resources to be a "Chemical Analyst" pursuant to G.S. 20-139.1. The hospital blood test which the State offers to prove Defendant's blood-alcohol concentration *was not done* according to the methods and procedures required of a Chemical Analysis authorized by G.S. 20-16.2 and G.S. 20-139.1. Defendant was not offered a chance to submit or refuse to submit to a chemical analysis of his breath or blood and was not advised of his rights concerning same. (Emphasis in the original).

The trial court denied defendant's motion and admitted the evidence.

Under N.C. Gen. Stat. § 20-139.1 (1983),

(a) Chemical Analysis Admissible. — In any implied-consent offense under G.S. 20-16.2, a person's alcohol concentration as shown by a chemical analysis is admissible in evidence. This section does not limit the introduction of other competent evidence as to defendant's alcohol concentration, including other chemical tests.

The remaining subsections of the statute provide detailed instructions concerning the procedures for chemical analysis of

STATE v. DRDAK

[101 N.C. App. 659 (1991)]

blood alcohol content, and the above stipulations indicate that the State did not comply with these procedures. Therefore, if the analysis of defendant's blood alcohol content is admissible at all, it must be admissible as "other competent evidence . . ., including other chemical tests[.]" under subsection (a). The State maintains that the evidence of defendant's blood alcohol content was an "other chemical test" and not a chemical analysis subject to the rigid requirements for analysis under § 139.1. The State concedes, however, that the purpose of defendant's blood test was to *determine the alcohol concentration of his blood* so that the physicians and nurses treating defendant on 14 February 1989 could provide appropriate medical care.

Defendant argues that the evidence was, in fact, an "analysis" of his blood and therefore subject to the statutory requirements. We agree with defendant that under the facts in the present case, the evidence admitted was an analysis of defendant's blood and did not meet the statutory requirements for chemical analysis. Therefore, the evidence should not have been admitted at trial.

Chemical analysis is defined in N.C. Gen. Stat. § 20-4.01(3a) (1983) as "[a] chemical test of the breath or blood of a person to determine his alcohol concentration, performed in accordance with G.S. 20-139.1[,] . . . includ[ing] duplicate or sequential analyses when necessary or desirable to insure the integrity of test results."

This Court has considered blood samples drawn for purposes of medical treatment subject to the statutory requirements of § 20-139.1 for analysis when the analyses of the blood alcohol content of the blood samples were later used as a basis for criminal charges of driving under the influence. Therefore, the State's argument that this kind of analysis as "other competent evidence" of defendant's alcohol concentration is without merit.

The present case is very similar to that of *State v. Bailey*, 76 N.C. App. 610, 334 S.E.2d 266 (1985), in which a defendant involved in an automobile collision was injured and unconscious upon arrival at the hospital. For medical treatment purposes, a medical laboratory technologist drew two vials of blood from the defendant and placed the blood in a refrigerator. A law enforcement officer picked up one of the blood vials from another trooper two weeks after it was drawn and transported it to the SBI lab for analysis in accordance with § 20-139.1. *Id.* at 612, 334 S.E.2d at 268. In rejecting the defendant's argument that the evidence was

insufficient to establish the integrity or identity of the sample, this Court stated, "[t]he State is not required to negate every possible flaw in the testing procedure in order for the results of the chemical analysis to be admissible, *it is only required that the State show compliance with the provisions of G.S. 20-139.1.*" *Id.* at 613, 334 S.E.2d at 269 (emphasis added). *See also State v. Gray*, 28 N.C. App. 506, 221 S.E.2d 765 (1976) (defendant charged with driving under the influence of alcohol entitled to a new trial because the State failed to carry its burden of proving that the breathalyzer test met the statutorily prescribed methods under N.C. Gen. Stat. § 20-139.1); 96 ALR3d 745 § 6 (1979).

We are aware that in *State v. Miller*, 80 N.C. App. 425, 342 S.E.2d 553, *appeal dismissed and disc. review denied*, 317 N.C. 711, 347 S.E.2d 448 (1986), this Court permitted admission of blood alcohol concentration tests performed by hospital personnel under similar circumstances and entered into hospital records as a medical records exception to the hearsay rule. The *Miller* court, however, did not address the issue before us of whether the blood analysis must comply with the requirements of § 20-139.1 before it can be admitted into evidence to support a criminal charge of driving under the influence.

In the present case, the State stipulated that the blood test analysis offered and admitted into evidence was not performed according to the methods and procedures required under N.C. Gen. Stat. § 20-16.2 and § 20-139.1. Because the analysis did not comply with the statute, we hold that the evidence was inadmissible; and by its erroneous admission, it so prejudiced defendant as to require a new trial. It is well-settled law in this jurisdiction that evidence of a blood alcohol content of 0.10 or more is sufficient evidence, standing alone, for conviction of driving while impaired. *State v. Smith*, 312 N.C. 361, 374, 323 S.E.2d 316, 323 (1984). In the case *sub judice*, the erroneously admitted evidence indicated that defendant's blood alcohol concentration was 0.178.

For the above reasons, we reverse defendant's conviction and order a new trial. Because we order a new trial on the above issue, we decline to address defendant's remaining assignments of error.

New trial.

Chief Judge HEDRICK and Judge WELLS concur.