NO. COA14-175
 NORTH CAROLINA COURT OF APPEALS
 Filed: 2 December 2014
STATE OF NORTH CAROLINA

 Pitt County
 v.
 No. 12 CRS 50689

JAMES M. ROBERTS

 Appeal by defendant from judgment entered 27 June 2013 by

Judge Christopher W. Bragg in Pitt County Superior Court. Heard

in the Court of Appeals 11 August 2014.

 Attorney General Roy Cooper, by Assistant Attorney General
 Derrick C. Mertz, for the State.

 The Robinson Law Firm, P.A., by Leslie S. Robinson, for
 Defendant.

 ERVIN, Judge.

 Defendant James M. Roberts appeals from a judgment entered

based upon his conviction for driving while subject to an

impairing substance. On appeal, Defendant argues that the trial

court erred by allowing the use of an unconstitutional mandatory

presumption regarding the effect of the results of the chemical

analysis of Defendant’s breath that was admitted into evidence,

allowing the admission of evidence concerning the result of a

chemical analysis of his breath, erroneously instructing the

jury concerning the extent to which the chemical analyst had
 -2-
complied with the applicable regulations and the extent to which

the time stamps shown on a video introduced into evidence

accurately reflected the amount of time that elapsed during the

time that certain events occurred, denying his motion to dismiss

the charge that had been lodged against him based upon the

State’s failure to prosecute other similarly situated defendants

using the presentment process, failing to intervene without

objection to preclude the prosecutor from making inappropriate

comments during her final argument, and placing him in jeopardy

twice for the same offense by using the results of a chemical

analysis of his breath to establish both the factual basis

needed to support his guilty plea and as the primary support for

the aggravating factor that the jury found to exist for

sentencing-related purposes. After careful consideration of

Defendant’s challenges to the trial court’s judgment in light of

the record and the applicable law, we conclude that the trial

court’s judgment should remain undisturbed.

 I. Factual Background

 A. Substantive Facts

 At approximately 8:00 p.m. on 26 January 2012, Defendant

was seen in the parking lot of a Harris Teeter grocery store.

At that time, Defendant was walking in a slow, unsteady manner

and appeared to be having trouble locating his vehicle. After
 -3-
making these observations, Robert Aiken approached Defendant for

the purpose of ascertaining if he needed assistance. However,

Defendant failed to make eye contact with or otherwise

acknowledge Mr. Aiken’s presence. According to Mr. Aiken,

Defendant was “wasted.”

 After noticing that Defendant had purchased beer, Mr. Aiken

enlisted the help of another man in an attempt to prevent

Defendant from getting in his car and driving away. As this was

occurring, Trooper William Brown of the North Carolina State

Highway Patrol arrived in the parking lot. Mr. Aiken flagged

Trooper Brown down and told Trooper Brown what he had observed.

As Mr. Aiken talked with Trooper Brown, Defendant reached his

automobile, placed a bag in the vehicle’s interior, and walked

away.

 After learning of Defendant’s condition from Mr. Aiken,

Trooper Brown waited to see if Defendant would return to his

vehicle. About 30 minutes later, Defendant returned to the

parking space in which his automobile was located, entered his

vehicle, and began driving out of the parking lot. While

following Defendant, Trooper Brown observed that Defendant

crossed the fog line twice and ran a red light. As a result,

Trooper Brown stopped Defendant’s vehicle, placed Defendant

under arrest for driving while subject to an impairing
 -4-
substance, and transported Defendant to the Pitt County

Detention Center for the purpose of chemically testing

Defendant’s breath for the presence of alcohol.

 After Trooper Brown and Defendant reached the testing room,

Trooper Brown removed Defendant’s handcuffs and asked Defendant

if he had anything in his mouth. In response, Defendant

mentioned “Copenhagen,” raked his finger between his lips and

his teeth, and displayed a tin of Copenhagen chewing tobacco.

Trooper Brown did not, however, see anything in Defendant’s

mouth. Although Defendant wanted to wash his mouth out before

the chemical test of his breath was administered, Trooper Brown

refused to allow Defendant to do so.

 At 9:22 p.m., Trooper Brown advised Defendant of his rights

relating to the testing process and began the statutory

observation period, during which he was required to ensure that

Defendant did not put anything in his mouth, regurgitate, vomit,

smoke, eat, or drink. At 9:33 p.m., Defendant exercised his

right to call someone in an attempt to obtain the presence of a

witness during the testing process. Shortly thereafter, Trooper

Brown left the testing room with Defendant for the purpose of

allowing Defendant to use the restroom. After Trooper Brown and

Defendant returned to the testing room, Defendant placed his

fingers in his mouth, causing Trooper Brown to place Defendant
 -5-
in handcuffs and initiate a new observation period, which began

at 9:52 p.m.

 At 10:06 p.m., Trooper Brown and Defendant left the testing

room for the purpose of ascertaining if Defendant’s witness had

arrived. During that process, Defendant wiped his mouth on his

jacket on two separate occasions. Upon returning to the testing

room, Trooper Brown took three samples of Defendant’s breath,

after which he reported that Defendant had a 0.19 blood alcohol

level.

 B. Procedural History

 On 26 January 2012, a citation charging Defendant with

driving while subject to an impairing substance was issued. On

13 August 2012, the Pitt County grand jury returned a

presentment requesting the District Attorney to investigate the

underlying circumstances and submit a bill of indictment

charging Defendant with driving while subject to an impairing

substance. On that same date, the Pitt County grand jury

returned a bill of indictment charging Defendant with driving

while subject to an impairing substance.

 The charge against Defendant came on for trial at the 24

June 2013 criminal session of the Pitt County Superior Court.

On 25 June 2013, the trial court summarily denied Defendant’s

Motion to Suppress Evidence (Miranda) and denied in part and
 -6-
granted in part Defendant’s Motion in Limine and/or Motion to

Prohibit the State From Introducing Any Expert Testimony. On 26

June 2013, the trial court denied Defendant’s Motion to Dismiss,

Motion to Suppress Chemical Analysis of Breath, and Motion to

Suppress Evidence (Investigatory Stop & Seizure).1 After the

trial court announced its rulings with respect to Defendant’s

pre-trial motions, Defendant entered a plea of guilty to driving

while subject to an impairing substance while preserving his

right to seek appellate review of the denial of his pretrial

motions. After concluding that there was a factual basis for

Defendant’s plea, the trial court accepted his plea of guilty.

 On 26 June 2013, the issue of whether Defendant had a blood

alcohol concentration of 0.15 or more within a relevant time

after driving came on for hearing before the trial court and a

jury. On 27 June 2013, the jury returned a verdict finding the

existence of the aggravating factor delineated in N.C. Gen.

Stat. § 20-179(d)(1). At the conclusion of the ensuing

sentencing hearing, the trial court determined that Level III

punishment should be imposed and entered a judgment sentencing

Defendant to a term of 90 days imprisonment in the custody of

the Sheriff of Pitt County, suspending Defendant’s sentence, and

placing Defendant on supervised probation for 12 months on the
 1
 The trial court entered written orders denying these
motions on 13 August 2013.
 -7-
condition that he pay the court costs and a $1,000 fine,

surrender his driver’s license and not operate a motor vehicle

until properly licensed to do so, complete 72 hours of community

service within 60 days, abstain from alcohol consumption for a

period of 60 days as verified by a continuous alcohol monitoring

system, and comply with the usual terms and conditions of

probation.2 Defendant noted an appeal to this Court from the

trial court’s judgment.

 II. Substantive Legal Analysis

 A. Validity of Breath Test Result Presumption

 In his first challenge to the trial court’s judgment,

Defendant contends that language added to N.C. Gen. Stat. § 20-

179(d)(1) in 2007 creates an unconstitutional mandatory

presumption. More specifically, Defendant contends that the

statutory provision to the effect that the result of a chemical

test of a defendant’s breath for the presence of alcohol “shall

be conclusive, and shall not be subject to modification by any

party” for purposes of determining that Defendant’s sentence

should be enhanced violates his federal and state constitutional

rights not to be deprived of liberty without due process of law

 2
 According to the transcript developed during the trial of
this case, the judgment was entered on 27 June 2013. However,
the judgment included in the record on appeal is dated 25 June
2013, a clerical error that creates the necessity for us to
remand this case to the trial court for correction.
 -8-
and to have the existence of an aggravating factor proven beyond

a reasonable doubt. N.C. Gen. Stat. § 20-179(d)(1). We do not

believe that Defendant is entitled to relief from the trial

court’s judgment on the basis of this contention.

 “The standard of review for alleged violations of

constitutional rights is de novo.” State v. Graham, 200 N.C.

App. 204, 214, 683 S.E.2d 437, 444 (2009), disc. review denied,

363 N.C. 857, 694 S.E.2d 766-67 (2010); see also Piedmont Triad

Reg’l Water Auth. v. Sumner Hills Inc., 353 N.C. 343, 348, 543

S.E.2d 844, 848 (2001) (stating that “de novo review is

ordinarily appropriate in cases where constitutional rights are

implicated”). “‘Under a de novo review, the court considers the

matter anew and freely substitutes its own judgment’ for that of

the lower tribunal.” State v. Williams, 362 N.C. 628, 632-33,

669 S.E.2d 290, 294 (2008) (quoting In re Greens of Pine Glen,

Ltd. P’ship, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

 According to N.C. Gen. Stat. § 20-179(d)(1), an aggravated

sentence can be imposed following a defendant’s conviction for

driving while subject to an impairing substance in the event

that there is:

 Gross impairment of the defendant’s
 faculties while driving or an alcohol
 concentration of 0.15 or more within a
 relevant time after driving. For purposes
 of this subdivision, the results of a
 chemical analysis presented at trial or
 -9-
 sentencing shall be sufficient to prove the
 person’s alcohol concentration, shall be
 conclusive, and shall not be subject to
 modification by any party, with or without
 approval by the court.

The trial court did not, however, include the language to which

Defendant’s constitutional challenge is directed in its

instructions to the jury concerning the extent, if any, to which

the jury should find that Defendant’s sentence should be

enhanced pursuant to N.C. Gen. Stat. § 20-179(d)(1). Instead,

the trial court instructed the jury that:

 when a defendant denies the existence of an
 aggravating factor, he is not required to
 prove that the aggravating factor does not
 exist. It is presumed that the aggravating
 factor does not exist. The State must prove
 to you beyond a reasonable doubt that the
 aggravating factor exists.

In addition, the trial court instructed the jury that, although

“the testing procedures and test results are admissible . . .

you are the sole judges of the credibility and weight to be

given to any evidence, and you must determine the importance of

this evidence in light of all other believable evidence.”

Finally, the trial court instructed the jury that:

 The defendant having pled guilty to Driving
 While Impaired, you must now consider the
 following question: Do you find from the
 evidence beyond a reasonable doubt the
 existence of the following aggravating
 factor?
 -10-
 The defendant had an alcohol concentration
 of .15 or more at the time of the offense or
 within a relevant time of the driving
 involved in this offense.

 If you find from the evidence beyond a
 reasonable doubt that the aggravating factor
 exists, then you will write “yes” in the
 space after the aggravating factor on the
 verdict sheet. If you have found the
 existence of the aggravating factor and have
 written “yes” in the space after the
 aggravating factor, then you will also
 answer Issue One “yes” and write “yes” in
 the space after Issue One on the verdict
 sheet.

As a result, instead of instructing the jury in accordance with

the portion of N.C. Gen. Stat. § 20-179(d)(1) upon which

Defendant’s constitutional challenge to the trial court’s

judgment is based, the trial court refrained from incorporating

any reference to the allegedly impermissible mandatory

presumption into its instructions and specifically instructed

the prosecutor to refrain from making any reference to the

challenged language in the presence of the jury.

 A criminal defendant lacks standing to challenge the

constitutionality of a specific statutory provision in the

absence of a showing he has suffered, or is likely to suffer, an

injury stemming from the application of the challenged provision

in the case in which he is involved. See Messer v. Town of

Chapel Hill, 346 N.C. 259, 260, 485 S.E.2d 269, 270 (1997)

(stating that “[s]tanding to challenge the constitutionality of
 -11-
a legislative enactment exists where the litigant has suffered,

or is likely to suffer, a direct injury as a result of the law’s

enforcement”) (internal quotation marks and citation omitted);

State v. Fredell, 283 N.C. 242, 247, 195 S.E.2d 300, 304 (1973)

(stating that, “[u]niformly, the accused has been permitted to

assert the invalidity of the law only upon a showing that his

rights were adversely affected by the particular feature of the

statute alleged to be in conflict with the Constitution”). In

the absence of such a showing, the defendant is precluded from

attacking the constitutionality of the relevant statutory

provision. See Poore v. Poore, 201 N.C. 791, 792, 161 S.E. 532,

533 (1931) (stating that “[i]t is no part of the function of the

courts, in the exercise of the judicial power vested in them by

the Constitution, to give advisory opinions, or to answer moot

questions, or to maintain a legal bureau for those who may

chance to be interested, for the time being, in the pursuit of

some academic matter”) (citations omitted). Defendant has not

directed our attention to any portion of the record which tends

to suggest that the jury’s decision to find the existence of the

aggravating factor set out in N.C. Gen. Stat. § 20-179(d)(1) was

in any way affected by the statutory provision upon which

Defendant’s constitutional argument rests. As a result,

Defendant lacks the standing necessary to support a challenge to
 -12-
the constitutionality of the statutory provision discussed in

his brief and is not, for that reason, entitled to relief from

the trial court’s judgment on the basis of this argument.

 B. Admissibility of the Breath Test Results

 Secondly, Defendant argues that the trial court erred by

failing to suppress the results of the chemical analysis of his

breath that Trooper Brown performed following Defendant’s

arrest. More specifically, Defendant contends that, since

Trooper Brown failed to satisfactorily comply with the statutory

requirement that there be a fifteen minute “observation period”

prior to the administration of the chemical test of Defendant’s

breath mandated by N.C. Gen. Stat. § 20-139.1, the trial court

should have granted his motion to suppress the breath test

results and refused to allow the admission of the chemical

analysis results into evidence. Defendant’s argument lacks

merit.

 1. Standard of Review

 As this Court has previously recognized, a defendant is

entitled to challenge the denial of a motion to suppress the

result of a chemical test of his breath as having been obtained

in violation of the applicable provisions of the General

Statutes by means of a motion to suppress filed pursuant to N.C.

Gen. Stat. § 15A-974. State v. Hatley, 190 N.C. App. 639, 642-
 -13-
44, 661 S.E.2d 43, 45-46 (2008). “Our review of a denial of a

motion to suppress by the trial court is ‘limited to determining

whether the trial judge’s underlying findings of fact are

supported by competent evidence, in which event they are

conclusively binding on appeal, and whether those factual

findings in turn support the judge’s ultimate conclusions of

law.’” State v. Barden, 356 N.C. 316, 340, 572 S.E.2d 108, 125

(2002) (quoting State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d

618, 619 (1982)), cert. denied, 538 U.S. 1040, 123 S. Ct. 2087,

155 L. Ed. 2d 1074 (2003).

 2. Applicable Legal Principles

 N.C. Gen. Stat. § 20-139.1(b)(1) provides that a chemical

analysis of a defendant’s breath is admissible if “[i]t is

performed in accordance with the rules of the Department of

Health and Human Services.” According to 10A N.C.A.C.

41B.0322(2), which governs testing performed using equipment

designed to analyze a defendant’s breath, the analyst must have

ensured that the applicable “observation period requirements

have been met.” The applicable regulations define “observation

period” as:

 a period during which a chemical analyst
 observes the person or persons to be tested
 to determine that the person or persons has
 not ingested alcohol or other fluids,
 regurgitated, vomited, eaten, or smoked in
 the 15 minutes immediately prior to the
 -14-
 collection of a breath specimen. The
 chemical analyst may observe while
 conducting the operational procedures in
 using a breath-testing instrument. Dental
 devices or oral jewelry need not be removed.

10 N.C.A.C. 41B.0101(6). According to well-established North

Carolina law, the State bears the burden of proving compliance

with the “observation period” requirement set out in N.C. Gen.

Stat. § 20-139.1. State v. Drdak, 101 N.C. App. 659, 664, 400

S.E.2d 773, 775 (1991), rev’d on other grounds, 330 N.C. 587,

411 S.E.2d 604 (1992); State v. Gray, 28 N.C. App. 506, 507, 221

S.E.2d 765, 765 (1976). In his brief, Defendant argues that

Trooper Brown violated the “observation period” requirement by

leaving Defendant alone on two occasions, failing to observe

that Defendant had wiped his face or mouth on his jacket twice,

and focusing his attention on unrelated activities, and that

these violations of the “observation period” requirement should

have led to the suppression of Defendant’s breath test results.

We do not find this argument persuasive.

 3. Evidentiary Analysis

 As an initial matter, Defendant was accompanied by Trooper

Brown on both of the occasions when he left the chemical testing

room. For that reason, we are unable to find any record support

for Defendant’s contention that Trooper Brown left him alone on

two occasions during the required observation period. In
 -15-
addition, Defendant fails to specify the exact conduct in which

Trooper Brown engaged at the time that he allegedly focused his

attention on irrelevant matters. However, Trooper Brown did

acknowledge that there were “split second[s]” when his eyes were

not trained directly on Defendant and that there were times

during which his “attention [was both] on [Defendant] and where

[he was] going.” As a result, Defendant’s contention that

Trooper Brown failed to satisfy the observation requirement

hinges upon the fact that, when Trooper Brown and Defendant left

the testing room at 10:06 p.m. in order to ascertain if

Defendant’s witness had arrived, Trooper Brown allowed Defendant

to walk behind him and may have failed to observe that Defendant

wiped his mouth on his jacket on two occasions.

 According to Defendant, the term “to observe” means “to

watch carefully[,] especially with attention to details or

behavior for the purpose of arriving at a judgment.” Merriam-

Webster Dictionary. Although we agree with Defendant that the

concept of “observation” as outlined in 10A N.C.A.C. 41B.0322(2)

contemplates the maintenance of a careful watch over the subject

to be tested, a proper resolution of Defendant’s challenge to

the trial court’s ruling must necessarily depend on the purpose

for which the observation period requirement was imposed. As we

have already noted, the observation period requirement was
 -16-
adopted to ensure that “a chemical analyst observes the person

or persons to be tested to determine that the person or persons

has not ingested alcohol or other fluids, regurgitated, vomited,

eaten, or smoked in the 15 minutes immediately prior to the

collection of a breath specimen.” 10A N.C.A.C. 41B.0101(6). As

a result, since the analyst is supposed to focus his or her

observations on the extent, if any, to which any event that

might affect the accuracy of the test has occurred, nothing in

the relevant regulatory language requires the analyst to stare

at the person to be tested in an unwavering manner for a fifteen

minute period prior to the administration of the test.3 Thus,

given that the record shows that Trooper Brown observed

Defendant over the course of a period of 21 minutes, during

which Defendant did not “ingest[] alcohol or other fluids,

regurgitate[], vomit[], eat[], or smoke[],” 10A N.C.A.C.

41B.0101(6), and during which Trooper Brown only lost direct

sight of Defendant for very brief intervals in the course of

attempting to ensure that Defendant’s right to the presence of a

witness was adequately protected, we are unable to conclude that

 3
 Our determination to this effect is reinforced by the fact
that the applicable regulations were amended in 2001 so as to
allow a single officer to observe multiple subjects
simultaneously. Should an analyst be required to act in the
manner described in Defendant’s brief, an analyst could never,
as the 2001 amendment allows, properly observe more than one
subject at a time.
 -17-
the trial court erred by determining that Trooper Brown failed

to comply with the applicable observation period requirement.

As a result, Defendant is not entitled to relief from the trial

court’s judgment based upon the denial of his motion to suppress

the results of the chemical analysis of his breath.

 C. Trial Court’s Instructions

 Thirdly, Defendant argues that the trial court erred by

instructing the jury that the trial court had previously

determined that the breath test upon which the State relied had

been performed in accordance with the applicable regulations, so

that the test results were admissible, and that the video

footage of Defendant’s activities in the breath testing room did

not reflect the actual elapsed time because of the manner in

which the video camera in question operated. According to

Defendant, the challenged instructions constituted an

impermissible expression of opinion and lacked adequate

evidentiary support. We do not find Defendant’s arguments

persuasive.

 1. Admissibility of the Chemical Test Results

 In his first challenge to the trial court’s instructions,

Defendant argues that the trial court erred by stating that:

 earlier in this case and out of your
 presence[,] the Court heard evidence
 regarding the chemical analysis testing of
 the Defendant . . . by Trooper Brown. The
 -18-
 Court has concluded that Trooper Brown
 followed the North Carolina Department of
 Health and Human Services regulations and
 standards regarding the chemical analysis of
 the Defendant’s breath and that the testing
 procedures and test results are admissible
 for purposes of this trial.

The trial court delivered the challenged instruction in light of

the State’s objection to the “attack on the chemical analysis”

made in Defendant’s opening argument. Although the trial court

allowed Defendant’s trial counsel to attack the credibility of

and the weight to be given to the chemical analysis, it

concluded that an instruction to the effect that the trial court

had deemed the chemical test results to be admissible would be

appropriate in order to eliminate any concern that the jury

might have about the admissibility of the breath test results.

 In his brief, Defendant contends that the trial court’s

instruction violated N.C. Gen. Stat. § 15A-1222, which provides

that “[t]he judge may not express during any stage of the trial,

any opinion in the presence of the jury on any question of fact

to be decided by the jury,” and N.C. Gen. Stat. § 15A-1232,

which provides that, “[i]n instructing the jury, the judge shall

not express an opinion as to whether or not a fact has been

proved and shall not be required to state, summarize or

recapitulate the evidence, or to explain the application of the

law to the evidence.” Although the relevant statutory
 -19-
provisions prohibit the trial court from “express[ing] any

opinion as to the weight to be given to or credibility of any

competent evidence presented before the jury,” State v. Fleming,

350 N.C. 109, 126, 512 S.E.2d 720, 733 (internal quotation marks

and citation omitted), cert. denied, 528 U.S. 941, 120 S. Ct.

351, 145 L. Ed. 2d 274 (1999), we are not persuaded that the

trial court expressed such an opinion in this instance. On the

contrary, the challenged portion of the trial court’s

instruction related to the admissibility of the chemical test,

which is a legal determination to be made by the trial court,

see N.C. Gen. Stat. § 8C-104(a), rather than an issue of fact to

be determined by the jury. In addition, Defendant’s argument

overlooks the trial court’s subsequent statement that, “[a]s I

have previously instructed you, you are the sole judges of the

credibility and the weight to be given to any evidence and you

must determine the importance of this evidence in light of all

other believable evidence.” After carefully analyzing the trial

court’s instructions in their entirety, we are unable to see how

the challenged instruction in any way impinged on the jury’s

right to make a determination concerning the credibility of or

the weight to be given to the chemical test results. As a

result, we do not believe that the trial court expressed an

opinion about a matter of fact that the jury was required to
 -20-
decide in order to determine whether the aggravating factor set

out in N.C. Gen. Stat. § 20-179(d)(1) existed.

 2. Testing Room Camera

 Secondly, Defendant challenges the appropriateness of the

trial court’s instruction that:

 on the video that you watched concerning
 [Defendant] and Trooper Brown in the Intox
 room in the Pitt County Sheriff’s Detention
 Center, that the numbers on the bottom of
 that indicate the length of the tape. Okay?
 It is not a true or accurate reflection of
 the time. The reason being is the cameras
 in the Intox room are . . . motion
 activated. If someone walks into the room,
 the camera will begin to record
 automatically. In fact, it will start and
 record ten seconds before. When someone
 walks out of the room, ten seconds later the
 camera will stop. It does not—and then when
 someone walks back into the room, whether
 it’s a minute, two minutes, 10 minutes, or
 30 minutes later, the camera will resume
 recording from where it stopped. So it does
 not show accurate reflections of the length
 of the time. That number on the bottom is
 the total amount of recorded time.

In challenging this instruction, Defendant contends that the

record did not contain any support for the trial court’s

comments. Once again, we do not find Defendant’s argument

persuasive.

 The testing room video was introduced into evidence at the

hearing concerning the existence of the aggravating factor set

out in N.C. Gen. Stat. § 20-179(d)(1) by Defendant, rather than
 -21-
by the State. Admittedly, the State did introduce the testing

room video during the hearing held in connection with

Defendant’s motion to suppress the test results, at which

counsel for both parties stipulated to the video’s authenticity

and acknowledged that the video did not accurately depict the

amount of time that actually transpired during the events

depicted on the resulting footage given that the camera used to

produce the video stopped recording 10 seconds after any persons

in the testing room left and resumed recording when someone re-

entered the room. As a result, the parties both appeared to

have agreed during an earlier stage of this proceeding that the

durational information shown on the video did not accurately

reflect the time that actually elapsed during the events

depicted on the resulting video footage.

 In the course of his closing argument, Defendant’s trial

counsel implied that the video accurately depicted the amount of

time covered in the recording. More specifically, Defendant’s

trial counsel argued that:

 Now here’s what we know for absolute sure if
 you look at the video, look at the time.
 From the time Trooper Brown and [Defendant]
 walk out to go to that bathroom until the
 time that they come back in is 35 seconds—35
 seconds. So he is gone, walked out, gone
 down to the bathroom down the hallway, done
 all these horrible things he’s described and
 come back, and he’s in the room in about 34—
 -22-
 it would be 34 seconds if you look at the
 video.

After the State objected to the argument being made by

Defendant’s trial counsel and requested the trial court to

deliver a curative instruction, the trial court told Defendant’s

trial counsel that “You’re saying that these things are true

when I know them not to be true, and you’re saying because the

State didn’t prove that, I can argue that they’re not true or

didn’t offer evidence on that. And . . . I can’t accept that.”

As a result, the trial court gave the curative instruction about

which Defendant now complains.

 As a general proposition, “one who causes . . . the court

to commit error is not in a position to repudiate his action and

assign it as ground for a new [sentencing hearing].” State v.

Payne, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971); see also

N.C. Gen. Stat. § 15A-1443(c) (stating that “[a] defendant is

not prejudiced . . . by error resulting from his own conduct”).

In view of the fact that the argument advanced by Defendant’s

trial counsel conflicted with Defendant’s earlier assertions

concerning the manner in which the timing mechanism on the

testing room video equipment operated, we see no error of law in

the trial court’s decision to correct the record using

information to which Defendant had, in effect, previously

stipulated. As a result, Defendant is not entitled to relief
 -23-
from the trial court’s judgment on the basis of the alleged

instructional errors discussed in his brief.

 D. Prosecution by Presentment

 Fourthly, Defendant argues that the State deprived him of

the equal protection of the laws by initiating the present

proceeding using a presentment instead of prosecuting him in

reliance upon the issuance of a citation.4 More specifically,

Defendant, who is a licensed attorney, argues that he was denied

his right to equal protection of the laws given that other

attorneys who had been charged with driving while subject to an

impairing substance had been charged using a citation rather

than the presentment process. Defendant is not entitled to

 4
 As an aside, we note that, although the argument heading
contained in the relevant portion of his brief makes reference
to a due process violation, Defendant did not advance any
argument in the body of his brief to the effect that he had been
deprived of his liberty without due process of law as the result
of the State’s reliance upon the presentment process. For that
reason, Defendant has abandoned any due process claim that he
might have intended to assert. N.C. R. App. P. 28(b)(6)
(stating that “[i]ssues not presented in a party’s brief, or in
support of which no reason or argument is stated, will be taken
as abandoned.”); Viar v. North Carolina Dep’t of Transportation,
359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (stating that
“[i]t is not the role of the appellate courts . . . to create an
appeal for the appellant”). Thus, the discussion in the text of
this opinion will focus entirely on Defendant’s equal protection
claim.
 -24-
relief from the trial court’s judgment on the basis of this

argument.5

 As a result of the fact that, as Defendant acknowledges,

attorneys practicing in Pitt and surrounding counties do not

constitute a suspect class, the challenged governmental conduct

must be upheld if “there is a rational relationship between

disparity of treatment and some legitimate governmental

purpose.” Central State University v. American Assoc. of

University Professors, 526 U.S. 124, 128, 119 S. Ct. 1162, 1163,

143 L. Ed. 2d 227, 231 (1999) (citing Heller v. Doe, 509 U.S.

312, 319-21, 113 S. Ct. 2637, 2639, 125 L. Ed. 2d 257, 266

(1993)). In other words, in the present context, “the burden

is on the one attacking the [act] to negate every conceivable

basis which might support it.” Heller, 509 U.S. at 320, 113 S.

Ct. at 2643, 125 L. Ed. 2d at 271 (internal quotation marks and

citations omitted). As a result, in order to obtain relief from

the trial court’s judgment on the basis of this claim, Defendant
 5
 Although the State has not addressed this issue in its
brief, we question whether Defendant waived his right to
challenge the denial of his dismissal motion on appeal by
pleading guilty. State v. White, 213 N.C. App. 181, 183, 711
S.E.2d 862, 864 (2011) (holding that a defendant is entitled to
challenge only a limited number of issues after entering a plea
of guilty, with the denial of a dismissal motion not being
included among them) (citations omitted). However, given that
the parties have not addressed this issue in their briefs in any
detail and the fact that Defendant’s contention lacks merit as a
substantive matter, we will simply assume, without in any way
deciding, that Defendant’s contention is properly before us.
 -25-
must show that there was no rational basis for proceeding

against him utilizing the presentment process rather than using

a citation as the charging instrument.

 As the record clearly reflects, Defendant is an attorney

who lives and practices in Pitt County and who has had dealings

with the court system and the District Attorney’s Office. For

this reason, the district court and superior court judges

residing in Pitt County recused themselves from presiding over

Defendant’s case and the District Attorney’s Office recused

itself from prosecuting the charge that had been lodged against

Defendant. For that reason, Defendant was prosecuted by a

special prosecutor and the trial of this case was presided over

by a jurist brought in from a different division. As the State

notes, considerations of judicial economy justified the use of

the presentment process, given that proceeding against Defendant

by presentment rather than citation obviated the necessity for

utilizing a special prosecutor and a non-resident trial judge on

two occasions, rather than one. As a result, given that the

State clearly had a rational basis for proceeding against

Defendant by means of a presentment rather than on the basis of

a citation, Defendant is not entitled to relief from the trial

court’s judgment on the basis of this argument.

 E. Prosecutor’s Final Argument
 -26-
 Next, Defendant argues that several comments made during

the prosecutor’s final argument were so grossly improper that

the trial court should have intervened in the absence of an

objection to preclude the making of those comments. More

specifically, Defendant contends that, as a result of the trial

court’s failure to preclude the making of these improper

prosecutorial arguments, he was deprived of his state and

federal constitutional right not to be deprived of liberty

without due process of law. Once again, we conclude that

Defendant is not entitled to relief from the trial court’s

judgment on the basis of this argument.

 “[A]rguments of counsel are left largely to the control and

discretion of the trial judge,” with counsel being “granted wide

latitude in the argument of hotly contested cases.” State v.

Fullwood, 343 N.C. 725, 740, 472 S.E.2d 883, 891 (1996), cert.

denied, 520 U.S. 1122, 117 S. Ct. 1260, 137 L. Ed. 2d 339

(1997). As a result of the fact that Defendant only lodged

contemporaneous objections to two of the comments that he now

challenges on appeal and the fact that the trial court sustained

both of Defendant’s objections,6 appellate “review [of

Defendant’s challenges to the prosecutor’s jury argument] is

 6
 Defendant has not contended that he is entitled to any
relief on the basis of the arguments to which the trial court
sustained Defendant’s objection.
 -27-
limited to an examination of whether the argument was so grossly

improper that the trial [court] abused [its] discretion in

failing to intervene ex mero motu.” State v. Gladden, 315 N.C.

398, 417, 340 S.E.2d 673, 685, cert. denied, 479 U.S. 871, 107

S. Ct. 241, 93 L. Ed. 2d 166 (1986).

 In his brief, Defendant challenges the prosecutor’s

reference to Defendant as “an alcoholic”; her statement that

Defendant “can tolerate his booze”; her contention that

Defendant sought to “make [Trooper Brown] out to be a liar”; her

question as to whether “it seem[s] reasonable that [Trooper

Brown] would give up his career, his integrity, his family, his

livelihood just to get that guy”; her contention that Trooper

Brown “was fair and because he’s honest and because he’s

decent,” “he’s telling the truth”; that Trooper Brown “was out

protecting and serving you” and “did not come in this room and

lie about it”; that the “judge has already told you [that the

time shown on the video footage] is not an accurate time”; that

the “[b]reath test is in. It’s done. It’s absolutely done”;

and that “the only way you can find [that the breath test

results] didn’t happen is if you pretend.” Although the

prosecutor might have been better advised to refrain from making

some of the challenged comments, we do not believe that

Defendant has established that “the [prosecutor’s] argument was
 -28-
so grossly improper that the trial [court] abused [its]

discretion in failing to intervene ex mero motu.” Gladden, 315

N.C. at 417, 340 S.E.2d at 685.

 A number of the prosecutorial comments to which Defendant’s

argument is addressed relate to Defendant’s status as an

alcoholic and the extent to which he had developed a tolerance

for alcoholic beverages, neither of which appear to us to be

directly relevant to the issue of whether Defendant had a blood

alcohol level sufficient to trigger application of the relevant

aggravating factor. In addition, we have already held that,

given the unusual circumstances present in this case, it was not

error for the trial court to instruct the jury that the time

stamp on the video footage that the jury saw at the hearing held

for the purpose of determining whether the aggravating factor

set out in N.C. Gen. Stat. § 20-179.1(d)(1) existed did not

accurately reflect the time that actually elapsed during the

events depicted on that footage. A considerable number of the

comments upon which Defendant’s contention is based stemmed from

the prosecutor’s efforts to rebut Defendant’s contention that

the jury should conclude that Trooper Brown’s testimony was not

credible.7 Although a number of the comments that the prosecutor

 7
 For example, Defendant’s trial counsel argued to the jury
that “[t]hat should raise you some concerns . . . about Mr.
Brown’s credibility” and stated, “[h]ow’s his balance and
 -29-
made in the course of defending Trooper Brown’s credibility may

lack adequate evidentiary support, we are unable to say that the

making of those comments rendered the hearing fundamentally

unfair given the strength of the evidence in favor of the

existence of the aggravating factor upon which the State relied.8

Finally, the prosecutor’s suggestion that the jury would have to

“pretend” in order to refrain from accepting the validity of the

breath test results strikes us as nothing more than a

permissible argument that Defendant’s challenge to the validity

coordination? Is it consistent with what Trooper Brown said?
Because I say that’s a credibility issue[.]”
 8
 In support of his challenge to the prosecutor’s defense of
Trooper Brown’s credibility, Defendant cites our decision in
State v. Potter, 69 N.C. App. 199, 202-04, 316 S.E.2d 359, 360-
64, disc. review denied, 312 N.C. 624, 323 S.E.2d 925 (1984), in
which we granted the defendant a new trial based, at least in
part, on the trial court’s failure to sustain Defendant’s
objections to the prosecutor’s repeated suggestion that the
arresting officers risked being prosecuted for perjury, being
fired from their jobs, and losing their retirement benefits if
they were untruthful, and asked the jury to “form some opinion
in your mind as to who has the most to lose by not telling the
truth in this case.” Id. at 202, 316 S.E.2d at 360. Although
the prosecutor in this case did assert that Trooper Brown would
not “give up his career, his integrity, his family, his
livelihood just to get that guy,” Defendant’s trial counsel did
not object to that statement. In addition, the argument made at
Defendant’s hearing did not tend to place any juror “in the
moral dilemma of either convicting the defendant or, in the
alternative, causing the officers to suffer the grievous
penalties suggested by the prosecutor.” Id. at 204, 316 S.E.2d
at 362. As a result, given the absence of an objection to the
challenged prosecutorial argument and the fundamental difference
between the argument at issue in Potter and the argument at
issue in this case, Potter provides no basis for awarding
Defendant any relief.
 -30-
of the breath test results had no merit. Thus, for all of these

reasons, we are unable to conclude that the prosecutor’s

argument was so grossly improper as to have necessitated ex mero

motu intervention by the trial court. As a result, Defendant is

not entitled to relief from the trial court’s judgment on the

basis of his challenge to the prosecutor’s jury argument.

 F. Defendant’s Double Jeopardy Claim

 Finally, Defendant argues that the trial court violated his

right not to be placed in jeopardy twice for the same offense

given that the State used the breath test result to assist in

establishing the factual basis for Defendant’s plea and to

support the aggravating factor used to enhance Defendant’s

punishment. We do not find Defendant’s argument persuasive.

 “The constitutional prohibition against double jeopardy

protects a defendant from additional punishment and successive

prosecution for the same criminal offense.” State v. Sparks,

362 N.C. 181, 186, 657 S.E.2d 655, 658-59 (2008) (internal

quotation marks and citation omitted). Put another way, the

double jeopardy clause protects criminal defendants against a

second prosecution for the same offense after acquittal, a

second prosecution for the same offense after conviction, and

multiple punishments for the same offense. State v. Gardner,

315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). Although
 -31-
Defendant appears to claim that he has been subjected to

multiple punishments for the same offense, his argument to this

effect cannot succeed given that, instead of being punished

twice, he has been subjected to a more severe punishment for an

underlying substantive offense based upon the fact that his

blood alcohol level was higher than that needed to support his

conviction for that offense.9 Defendant had not cited any case

in support of his contention that a double jeopardy violation

occurs in the event that the same item of evidence is used once

to prove an element of a substantive offense and a second time

to support the imposition of an enhanced sentence, particularly

when the evidence in question is used to support different

factual determinations in each instance. As a result, Defendant

is not entitled to relief from the trial court’s judgment on the

basis of the final argument set out in his brief.

 III. Conclusion
 9
 According to N.C. Gen. Stat. § 20-138.1(a), a defendant is
guilty of driving while subject to an impairing substance in the
event that he or she is under the influence of an impairing
substance or has an alcohol concentration of at least 0.08 at
any relevant time after driving. According to N.C. Gen. Stat. §
20-179(d), an aggravating factor that can be used to enhance the
sentence to be imposed upon a person convicted of driving while
impaired exists in the event that the defendant had an alcohol
concentration of at least 0.15 within a relevant time after the
driving. N.C. Gen. Stat. § 20-179(d)(1). As a result, one
blood alcohol level suffices to support a finding of the
defendant’s guilt of the substantive offense and a different,
and higher, blood alcohol level suffices to support the
enhancement of the defendant’s sentence.
 -32-
 Thus, for the reasons set forth above, we conclude that

none of Defendant’s challenges to the trial court’s judgment

have merit. As a result, the trial court’s judgment should, and

hereby does, remain undisturbed, except that the judgment should

be, and hereby is, remanded to the trial court for the

correction of a clerical error.

 NO ERROR. REMANDED TO TRIAL COURT FOR CORRECTION OF

CLERICAL ERROR.

 Judges Robert C. HUNTER and MCCULLOUGH concur.